UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN EL-LEWIS SHABAZZ,

                Petitioner,

v.                              CASE NO. 2:06-cv-10922
                              HONORABLE GEORGE CARAM STEEH

H. J. MARBERRY,

                Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

       This matter is pending before the Court on the *pro se* habeas corpus petition of John El-Lewis Shabazz. Petitioner is an inmate at the Federal Correctional Institution in Milan, Michigan (FCI-Milan) where Respondent is the warden.

       In 2001, Petitioner pleaded guilty in this District to possession with intent to distribute over 50 grams of cocaine, 21 U.S.C. § 841(a)(1). *See United States v. Shabazz*, No. 1:00-cr-20068 (E.D. Mich. Oct. 14, 2001). On February 1, 2002, United States District Judge David M. Lawson sentenced Petitioner to 125 months in prison followed by 8 years of supervised release. Judge Lawson subsequently reduced Petitioner's prison term to 65 months. Petitioner is projected to be released from custody on September 22, 2006.

       In October of 2003, Petitioner enrolled in a residential drug abuse treatment program, which offers certain benefits to nonviolent offenders upon successful completion of the program. Petitioner signed a written statement declaring that he was aware of the standards of the program

and the consequences for violating the rules.  He agreed to abide by the rules and to be held accountable for his actions.

On January 5, 2006, prison officials charged Petitioner with (1) attempting to introduce nonhazardous contraband (tobacco and rolling papers) into prison and (2) being in an unauthorized area.  Petitioner was found guilty of both charges and punished with 90 days loss of telephone, commissary, and visiting privileges.  Officials also removed Petitioner from the residential drug abuse program and reduced the time that he was expected to spend in a community corrections center from 180 days to 90 days.  Petitioner challenged the latter sanction in administrative proceedings, but he was unsuccessful.

Petitioner filed his habeas corpus petition on March 1, 2006.  He alleges that the Bureau of Prisons has deprived him of his right to spend 180 days or 10% of his sentence in a community corrections center.  On May 12, 2006, Respondent filed a responsive pleading in which he argues that Petitioner has failed to exhaust administrative remedies for his claims and that he is not entitled to the relief sought.  Petitioner then moved for summary judgment on the ground that Respondent did not answer or contest the facts.

## II.  Discussion

### A.  Exhaustion of Administrative Remedies

A preliminary question is whether Petitioner exhausted administrative remedies for his claims.  "It is well established that federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted." *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981).  The Federal Bureau of Prisons maintains an administrative remedy program through which inmates may seek formal review of

issues relating to any aspect of their confinement.  *See* 28 C.F.R. § 542.10(a).  Inmates must first

seek informal resolution of their concerns with staff.  If they are unsuccessful, they may submit a

request for administrative remedy to the warden of the prison.  An inmate who is dissatisfied

with the warden's response may appeal to the appropriate regional director for the Bureau of

Prisons.  The regional director's decision may be appealed to General Counsel for the Bureau of

Prisons.  *See* 28 C.F.R. §§ 542.13-15.  "An inmate has not fully exhausted his administrative

remedies until he has appealed through all three levels."  *Irwin v. Hawk*, 40 F.3d 347, 349 n.2

(11th Cir. 1994).

Petitioner filed an administrative complaint with the warden and with the Regional

Director of the Bureau of Prisons before filing his habeas petition.  He subsequently appealed to

General Counsel for the Bureau.  That appeal was still pending when Respondent filed her

answer to the habeas petition on May 12, 2006.  Although the Bureau of Prisons had not

completed its review of Petitioner's claims before Petitioner filed his habeas petition,

Petitioner's claims do not warrant habeas relief.  The Court therefore will excuse Petitioner's

failure to exhaust administrative remedies for his claims and will proceed to address Petitioner's

claims.

### B.  Reduction in the Time Spent in a Community Corrections Center

Petitioner complains that prison officials expelled him from the residential drug abuse

program and improperly reduced his time in a community corrections center on the basis of

nonviolent misconduct and 300-level offenses.[1]  He asserts that only 100-level offenses warrant

---

[1]  Introducing nonhazardous contraband in prison is a code 331A offense, and being in an unauthorized area is a code 316 offense.

3

removal from the drug abuse program and a reduction in time spent in a community corrections center.

### 1. The Residential Drug Abuse Program and Sanctions for Prison Misconduct

Pursuant to 18 U.S.C. § 3621(b), the Federal Bureau of Prisons must provide treatment for prisoners that have a treatable substance abuse problem or addiction. The Bureau of Prisons must offer incentives for successful participation in such programs. *See* Bureau of Prisons Program Statement 5330.10 (May 17, 1996), at ¶5.3.5; *see also* 18 U.S.C. § 3621(e)(2)(B) (providing for a one-year reduction in sentence for successful completion of a drug abuse treatment program). One incentive is placement in a community corrections center for up to 180 days. *See* 28 C.F.R. § 550.57(a)(2). Disruptive or negative behavior may result in an inmate's removal from a drug abuse program and the loss of incentives previously achieved. 28 C.F.R. §§ 550.55(c) and 550.57(c); Program Statement 5330.10 ¶ 5.4.4. (2).

### a. Petitioner's Misconduct

On January 4, 2006, Petitioner did not return to his work area after taking out the trash. His foreman spent approximately ten minutes looking for him and eventually found him sitting outside about 25 feet from the building. A subsequent search of the area revealed 53 pouches of pipe tobacco, 98 individually wrapped bags of tobacco, and 57 packets of rolling papers.

Petitioner does not dispute the disciplinary charges leveled against him. Instead, he claims that only misconduct involving alcohol or drugs, violence toward staff or inmates, or a 100-level offense is a basis for removal from a drug abuse program. Because his misconduct consisted of 300-level behavior, he asserts that he should not have been removed from the program.

4

### b.  The Applicable Program Statement

Program Statement 5330.10 authorizes prison officials to remove an inmate from a drug abuse treatment program for disruptive behavior.  Ordinarily, officials must warn an inmate before removing him or her from the program.  *See* Program Statement 5330.10, at ¶5.4.4.(2). Officials may remove an inmate from the program without a warning when the inmate used or possessed alcohol or drugs, committed a violent act or threatened violence against staff or another inmate, or committed a 100-level act.  *Id*.  Officials also may forego the warning and expel an inmate from the program when "the inmate's behavior is of such magnitude that his or her continued presence would create an immediate and ongoing problem for staff and inmates." *Id*.

### c.  Application to Petitioner's Case

Petitioner apparently received two prior warnings about his behavior.  In addition, the Coordinator of the residential drug abuse program at FCI-Milan concluded that Petitioner's continued presence in the program would create an immediate and ongoing problem.  In reaching this conclusion, the Coordinator stated that tobacco is prohibited in prison and its sale and distribution within the prison constitute a serious security risk to staff and inmates.  The Coordinator also stated that Petitioner's participation in prohibited activity demonstrated abandonment of the principles and objectives of the treatment program.  The Coordinator determined that Petitioner's misconduct presented a community safety concern that required placement in a community corrections center for only 90 days, not 180 days.

Respondent reached a similar conclusion.  She stated in a response to Petitioner's administrative complaint that, although the charges against Petitioner were categorized as

moderate, Petitioner's behavior was more serious than the charges indicated.  Respondent determined that Petitioner's willful and calculated behavior demonstrated a complete abandonment of the program's objective, which is to equip individuals with skills necessary to choose and maintain a lifestyle free of drugs and crime.

The Bureau of Prisons "has substantial discretion in its decisionmaking." *Orr  v. Hawk*, 156 F.3d 651, 653 (6th Cir. 1998).  Its decision to expel Petitioner from the drug abuse program was not an abuse of discretion in light of Petitioner's misconduct.  Removal from the program, in turn, was a legitimate basis for reducing the time that Petitioner was scheduled to spend in a community corrections center.  *See* 28 C.F.R. § 550.57(c) ("Withdrawal or removal from the residential program may result in the loss of incentives previously achieved.").

Furthermore, prisoners have "no inherent constitutional right to be housed in a particular institution or to enjoy a particular security classification."  *Beard v. Livesay*, 798 F. 2d 874, 876 (6th Cir. 1986) (internal citation omitted).   "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  *Montayne v. Haymes*, 427 U.S. 236, 242 (1976).

The Court concludes that Petitioner had no legitimate claim to confinement in a community corrections center for 180 days.  Because his interest in living at a community corrections center for 180 days is not a protected interest, no cognizable harm occurred when he was deprived of that interest.  The Supreme Court has "rejected the notion that '*any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is

sufficient to invoke the protections of the Due Process Clause." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976)) (emphasis in original). Consequently, no violation of the Due Process Clause occurred in this case.

## 2. The Ten Per Cent Rule

Petitioner alleges that, even if he is not entitled to 180 days in a community corrections center under the residential drug abuse program, he should be permitted to serve 10% of his sentence in a community corrections center pursuant to 18 U.S.C. § 3624. This statute reads in pertinent part:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Although 10% of Petitioner's sentence is approximately 180 days, the statute "does not require placement in a [community corrections center]. It only obligates the [Bureau of Prisons] to facilitate the prisoner's transition from the prison system." *Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004). Moreover, "the obligation is qualified by the phrase 'to the extent practicable.'" *Id*. As Respondent explained during the administrative proceedings, the 10% date is only indicative of the first date of eligibility. "Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society." *United States v. Laughlin*, 933 F.2d 786, 789 (9th Cir. 1991); *see also Fagiolo v. Smith*, 326 F. Supp.2d 589, 592-93 (M.D. Pa. 2004) (stating that a prisoner is not entitled to placement in a

community corrections center under 18 U.S.C. § 3624(c)).  Inmates who pose a significant threat to the community due to their current offense or behavioral history ordinarily are not eligible for placement in a community corrections center.  *See* Program Statement 7310.04 (Dec. 16, 1998), at ¶ 10 i.

The director of the residential drug abuse program at FCI-Milan determined that Petitioner was a risk to the community as a result of his failure to abide by institutional rules. Furthermore, Petitioner was not deprived of placement in a community corrections center; he merely had the amount of time spent there reduced.  The Court concludes that Petitioner was not denied his statutory right to a reasonable opportunity to adjust to, and prepare for, re-entry into the community.

### 3.  The Double Jeopardy and Ex Post Facto Claims

Petitioner also claims that prison officials violated his rights under the Double Jeopardy and Ex Post Facto Clauses of the United States Constitution.  *Ex post facto* laws include:

> 1st.  Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2nd.  Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. 386, 390 (1798).  "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto*:  it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (internal and end footnotes omitted).

The Ex Post Facto Clause is not implicated here, because the relevant statutes,

regulations, and program statements became effective before Petitioner entered the residential

drug abuse program and before he was found guilty of prison misconduct.  Thus, there was no

retroactive application of law to events occurring before their enactment.

Petitioner's double jeopardy claim likewise has no merit.  "Prison disciplinary hearings

are not part of a criminal prosecution, *Wolff v. McDonnell* 418 U.S. 539, 556, 94 S. Ct. 2963,

2974, 41 L. Ed. 2d 935 (1974), and therefore do not implicate double jeopardy concerns, *see*

*Breed v. Jones*, 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975) (application of

the double jeopardy clause is limited to proceedings which are 'essentially criminal')."  *Lucero*

*v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994).

### III.  Conclusion

Petitioner has failed to show that he is "in custody in violation of the Constitution or laws

or treaties of the United States."  28 U.S.C.  § 2241(c)(3).  He had no constitutional or statutory

right to placement in a community corrections center for 180 days.   Therefore, Petitioner's

claims have no merit, and his petition for a writ of habeas corpus [Doc. #1, Mar. 1, 2006] is

DENIED.  His motion for summary judgment [Doc. #7, May 16, 2006] is DENIED because he

has not demonstrated that he is entitled to judgment in his favor as a matter of law.  Fed. R. Civ.

P. 56(c).


S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated:  June 5, 2006

9

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on June 5, 2006, by electronic and/or ordinary mail.


S/Josephine Chaffee_____
Secretary/Deputy Clerk